**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | File No. 0:15-mj-984 KES |
| Plaintiff, | |
| vs. | **MEMORANDUM OF LAW IN SUPPORT OF A CONDITIONAL RELEASE ORDER** |
| Khaalid Adam Abdulkadir, | |
| Defendant. | |

Defendant Khaalid Abdulkadir ("Abdulkadir") respectfully requests that the Court release him pending trial, with conditions that will reasonably assure his reappearance and the safety of the community.

**Argument**

"The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *United States v. Salerno*, 481 U.S. 739, 747 (1987). Section 3142 of United States Code Title 18 "favor[s] release over pretrial detention." *United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985). "The wide range of restrictions [conditions] available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *Id.* Detention is appropriate only if the Government proves by clear and convincing evidence that the defendant is a danger to others or to the community, or when the Government proves by a preponderance of the evidence that the defendant is a risk of flight, and that, in either case, there are no conditions or combination of conditions that will reasonably assure the safety of the community or the

defendant's appearance at future court proceedings. 18 U.S.C. § 3142(f); *Orta*, 760 F.2d at 891.[1]

## I. The Bail Reform Act favors release of Abdulkadir pending trial.

The Court is to consider the factors enumerated in 18 U.S.C. § 3142(g) to determine whether pretrial detention is appropriate:

    (1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

    (2)    the weight of the evidence against the person;

    (3)    the history and characteristics of the person, including—

        (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of

---

[1] Because the preconditions of the rebuttable presumption of 18 U.S.C. § 3142(e) are not met here, this is not a case in which the defendant bears a limited burden of production.

> property that, because of its source, will not reasonably assure the appearance of the person as required.

None of these factors favor pretrial detention in this case.

### A. The nature and circumstances of the offense charged do not favor detention.

An alleged threat, by itself, is not a sufficient basis for pretrial detention. *See, e.g.*, *United States v. Brannon*, No. 00-2037, 2000 U.S. App. LEXIS 3234, at *7 (10th Cir. Mar. 2, 2000) (affirming order releasing defendant pending trial where defendant was alleged to have threatened federal judge); *United States v. Bottoms*, No. 3:12-mj-1033, 2013 U.S. Dist. LEXIS 35295, at *3–4 (M.D. Tenn. Mar. 14, 2013) (defendant who allegedly threatened to cut off head of Social Security Administration employee released on own recognizance with conditions following detention hearing); *United States v. Eckenrode*, Nos. 3:13-cr-00021, 3:12-mj-07094, 2013 U.S. Dist. LEXIS 9297, at *2, *13 (N.D. Ohio Jan. 23, 2013) (ordering release of defendant on bond under terms and conditions set by Magistrate Judge where defendant was alleged to have threatened police officers with, *inter alia*, a message stating, "if you come to my house for any reason you will die").

Here, the Government has charged Abdulkadir with a violation of 18 U.S.C. § 115(a)(1)(B) on the basis of two deleted tweets, allegedly obtained from a Confidential Informant, that emanated from the Twitter account "@kabdulkadir14." *See* December 11, 2015 Affidavit of Vadym Vinetsky ¶ 4. Though the Government characterizes the tweets as "death threats," *id.*, the tweets do not identify any individual. Indeed, when asked on December 16, 2015 who the Government contended was the target of the alleged

"threats," Special Agent Vinetsky had no answer. The vague social-media postings attached to the Criminal Complaint do not support pretrial detention of Abdulkadir.

### B. The evidence against Abdulkadir, to the extent any exists, does not support pretrial detention.

The Government has no credible evidence that Abdulkadir committed any crime. As a preliminary matter, the Government's attempted authentication of the @kabdulkadir14 Twitter account is deficient as a matter of law. *See United States v. Vayner*, 769 F.3d 125, 134–35 (2d Cir. 2014) (vacating conviction; holding that district court abused its discretion by admitting contents of internet page without proper authentication). In *Vayner*, the Government attempted to authenticate defendant's social-media page with testimony that "[i]t has the defendant's profile picture on it," included identifying information about the defendant, and contained the defendant's name. *Id.* at 129. Here, the Government has attempted to authenticate the @kabdulkadir14 Twitter account on the same bases that were determined to be insufficient in *Vayner*. And here, the name on the Twitter account at issue is "Khalid"—a misspelling of Abdulkadir's first name.

The December 9, 2015 tweets, moreover, conveyed no threat. They were not directed at any federal authority, nor would anyone sending a tweet from the "@kabdulkadir14" Twitter account have any reason to believe that any federal authority would feel threatened by the tweets because none of @kabdulkadir14's followers, as of December 9, 2015, were federal authorities. *See United States v. Fenton*, 30 F. Supp. 2d 520, 526 (W.D. Pa. 1998) (holding that statements "did not constitute threats" under 18

U.S.C. § 115(a)(1)(B) because "there was simply no connection between [third-party], the recipient of the communication, and [congressman], its intended object"); *United States v. Bellrichard*, 779 F. Supp. 454, 459 (D. Minn. 1991) (harmonizing Section 876 with First Amendment and holding that a statement is not a "threat" under Section 876 unless "a reasonable recipient, familiar with the context of the communication, would interpret it as a threat"; granting judgment of acquittal on Section 876 count because postcard sent to third-party "contain[ed] no request that it be communicated to the individuals allegedly threatened"). The lack of credible evidence against Abdulkadir supports his release pending trial.

**C.   Abdulkadir's history and characteristics do not support detention.**

Abdulkadir's history and characteristics do not support detention:

- He is 19 years old.

- He was born and raised in Minneapolis.

- He is a diligent, successful student, currently attending his first year of pre-nursing classes at Minneapolis Community & Technical College.

- He is a hard worker, currently employed at Sea Life in Bloomington.

- He has a close relationship with his parents and nine siblings, all of whom live together in Minneapolis.

- In addition to his immediate family, he has thirteen uncles, aunts, and cousins in Minneapolis.

- He does not have a current passport.

- He has no history of drug or alcohol abuse, though, as he admitted to U.S. Pretrial Services, he has used marijuana on occasion.

5

- Aside from a moving violation and a minor theft charge, he has no criminal record.

- He has never missed a court appearance.

- He was not on probation or parole at the time of his arrest.

The Government may argue that Abdulkadir is a flight risk based on the Government's allegation that Abdulkadir communicated (via Twitter and Facebook) with Miski and Nur, two individuals who allegedly left Minnesota to join al-Shabaab and ISIL. (*See* December 11, 2015 Affidavit of Vadym Vinetsky ¶¶ 11–14.[2]) These conversations allegedly occurred in May 2014 and January 2014. Putting aside issues of authentication, and assuming, *arguendo*, that Abdulkadir communicated with Miski and Nur, this is not evidence that Abdulkadir is a flight risk. The first of these conversations allegedly occurred eighteen months ago; the second, eleven months ago. They do not support a finding that Abdulkadir is a flight risk today.

In addition to frustrating Abdulkadir's ability to meet with counsel to prepare a defense (including challenging the Government's allegations about the source of social-media postings), detention would remove Abdulkadir from his family for an extended period. It would disrupt his education and likely cause him to lose his job. In short, the future of a young man could be destroyed by allegations that the young man made unwise comments on a social-media site. Such a result would be contrary to the purposes of the Bail Reform Act.

---

[2] There are multiple ¶ 14s in the affidavit. This reference is to the first ¶ 14.

> **D.    Abdulkadir's release poses little or no danger to any person or the community.**

For a year, the FBI has followed Abdulkadir around, including at his school, flustering him and distracting him from his schoolwork. In the face of this, Abdulkadir has demonstrated remarkable restraint. He has not reacted—except by allegedly posting vague comments, in frustration, on Twitter.

On December 10, 2015, federal agents raided Abdulkadir's house. They broke in from multiple entrances and threw smoke bombs at or near the inhabitants, including an 18-month-old child who suffers from asthma. The agents grabbed Abdulkadir and shoved him outside. Even as his home was ransacked, and after being manhandled, however, Abdulkadir did not retaliate. He does not pose a danger to the community if released.

**II.    The 18 U.S.C. § 3142(g) factors favor Abdulkadir's release pending trial.**

Conditions of release are available that will assure Abdulkadir's appearance in court and the safety of the community. These conditions could include a large appearance bond, regular reporting to Pretrial Services, a promise not to obtain a passport, a requirement that Abdulkadir continue his work and education, a prohibition on travel outside of Minnesota, a requirement that Abdulkadir reside at his home in Minneapolis, and even the imposition of a curfew and electronic home-monitoring.

### Conclusion

For the foregoing reasons, Abdulkadir respectfully requests that he be released pending trial on conditions set by the Court.

DATED:  December 18, 2015          **ROBINS KAPLAN LLP**

By: */s/ Christopher W. Madel*
    Christopher W. Madel,  (230297)
    Aaron R. Thom,  (0392646)

800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
612 349 8500
CMadel@RobinsKaplan.com
AThom@RobinsKaplan.com

**ATTORNEYS FOR DEFENDANT**