UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
District Court File No. 16-0002 (KES/VLD)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **RESPONSE BY THE UNITED** |
| Plaintiff, | ) | **STATES TO DEFENDANT'S** |
| | ) | **MOTIONS *IN LIMINE*** |
| v. | ) | |
| | ) | |
| KHAALID ADAM ABDULKADIR, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, John Docherty, Assistant United States Attorney, and Charles J. Kovats, Jr., Assistant United States Attorney, respectfully submits its response to the defendant's Motions *in Limine*, Docket No. 98, filed on Tuesday, March 1, 2016.

The United States is not responding to all of the defendant's motions, because several of them go over ground that has been extensively litigated already in this case. For example, defendant's motion to strike "non-conforming" portions of the Indictment and Bill of Particulars is, in the government's view, a re-argument of the defense claim that the Indictment in this case is indefinite in its identification of the targets of the threatening tweets. This issue has been more than adequately litigated, see Docket No. 36 at page 7-8, Docket No. 63, Docket No. 73, and Docket No. 78. The government addresses, in this response, the defendant's claim that evidence related to terrorism is especially prejudicial and therefore should not be admitted under Fed. R. Evid. 404(b),

1

and the defendant's allegations that the government is not making its disclosures in a timely fashion. The government also agrees, as noted below, with the defendant's suggestion that the specifics of the Bill of Particulars be incorporated into the Indictment.

**The Government Concurs in Most of Defendant's Motion to Insert Particulars into the Indictment**

Defendant moves to have the specifics of the Bill of Particulars read into the Indictment. For example, Count One of the Indictment, rather than stating "a federal judge" would simply be read to the jury as "Senior Judge Michael J. Davis." This procedure is agreeable to the government. The implication of this, though, is that the original-language Indictment, and the Bill of Particulars, will not be seen by the jury. The jurors are finders of fact; there is no reason to give finders of fact an Indictment, a Bill of Particulars, and finally a modified Indictment, and then to explain to them the litigation that led to there being three documents rather than one for their consideration.

The government also does not agree that the phrase "FBI Special Agents and FBI Task Force Officers assigned to the Joint Terrorism Task Force of the FBI's Minneapolis Division" should be stricken. Defendant asserts, without elaboration, that this phrase is "unnecessary and inflammatory." Contrary to defendant's assertion, the phrase is actually necessary if the government's Bill of Particulars is to limit as precisely as possible the FBI personnel who were the targets of the defendant's threat. As for being "inflammatory," it is simply not true that any mention of terrorism is inflammatory, or unfairly prejudicial. This point is discussed immediately below, in the section of this response devoted to Fed. R. Evid. 404(b) evidence.

2

**Defendant's Motion to Exclude Relevant, Probative Evidence Offered Under Fed. R. Crim. P. 404(b) Should be Denied.**

Defendant asserts that this Court should not permit the jury to hear the government's evidence, proffered under Fed. R. Evid. 404(b), that establishes the defendant's motive to threaten Judge Davis and FBI JTTF personnel.   The defense also seeks exclusion of the government's proffered evidence of the defendant's prior demonstrations of animus towards law enforcement and a threat he directed towards another man, in which the defendant stated that he had a pistol.   The defense motion to exclude this evidence should be denied.   Defendant has been in touch via social media with two fugitive terrorism defendants, seeking coaching from each of them on how to travel to Syria himself.   This demonstrates the defendant's affinity for these men, and for their actions.   A photograph on defendant's Facebook profile page, put up one full month before the defendant made the Twitter threats that resulted in criminal charges, is of a vulgar, middle finger gesture being made towards a police car, which is evidence relevant to showing the jury that the defendant's Twitter threats on December 9 were not the result of transitory anger or the product of voluntary intoxication. [1]   The same is true of defendant's interaction with Deputy U.S. Marshal Brad Flaa on May 19, 2015 at the federal courthouse in Minneapolis.   All four of these incidents are not only admissible under Fed. R. Evid. 404(b) to show identity, motive, and intent, but they are also the context of the crime charged and as such, should be admissible as *res gestae* evidence

---

[1] *See,* Docket Number 97, "Defendant's Proposed Jury Instructions," Defendant's Proposed Jury Instruction No. 22 (page 33), "Impaired Mental State – Influence of Drugs."

3

without the need for Fed. R. Evid. 404(b) procedures. Finally, the threat, accompanied by a claim of ownership of a pistol, that the defendant directed against another man, is admissible under Fed. R. Evid. 404(b) to show the defendant's intent.

### The Defendant's Communications with Miski and Abdi Nur are not Unfairly Prejudicial

The defense claims that the government's evidence of the defendant's communications with fugitive terrorism defendants (and of the defendant's attendance at the court appearances of persons accused of federal terrorism offenses) is inflammatory and unfairly prejudicial. The standards for admission of Fed. R. Evid. 404(b) evidence were set forth in detail in the government's own motion *in limine* seeking the admission of the evidence, see, Docket No. 92 at pages 9 and 10, and need not be reiterated here. Defendant concentrates his argument against admissibility on a claim that admission of evidence concerning ISIL or *al-Shabaab* is unfairly prejudicial, both under Fed. R. Evid. 404(b) and under Fed. R. Evid. 403. Its admission, therefore, according to defendant, violates the fourth prong of the test for admissibility of Fed. R. Evid. 404(b) evidence – that the proposed evidence "be higher in probative value than in prejudicial effect."

What is meant by "prejudicial effect," though, is not the prejudicial effect that is inherent in all probative evidence, but any tendency the Fed. R. Evid. 404(b) evidence might have to persuade by unfair means. "Though all Rule 404(b) evidence is inherently prejudicial, the test under Rule 403 is whether its probative value is *substantially* outweighed by the danger of *unfair* prejudice." *United States v. Cook*, 454 F.3d 938, 941

4

(8th Cir. 2006) (*citing United States v. Noland*, 960 F.2d 1384, 1387 (8th Cir.1992)) (emphasis in original).

The problem with defendant's argument that all ISIL or *al-Shabaab* evidence is so prejudicial that it can never be admitted is that all criminal cases begin with an accusation of criminal behavior – usually an allegation of some act that the jury will find distasteful, at a minimum. It is hard to see how defendant's proposed rule for 404(b) evidence would not operate to bar all inherently off-putting evidence from criminal cases – which is to say, most criminal evidence. The solution to the issue presented by the nature of most evidence in criminal trials is not to bar evidence, but to properly and emphatically instruct the jury on their duties and responsibilities. In its motion seeking admission of the proffered 404(b) evidence, the government offered to accede to a limiting instruction. *See,* "Government's Motion to Admit Rule 404(b)/*Res Gestae* Evidence," Docket No. 92, footnote 12 on page 12. Later, when the government filed its proposed jury instructions, it included the model Eighth Circuit 404(b) cautionary instruction. The government remains ready to agree to any appropriate cautionary instruction, both immediately before 404(b) evidence is introduced, and in the Court's final charge to the jury.

In support of his claim that references to ISIL or *al-Shabaab* are so highly prejudicial that they are almost *per se* inadmissible, the defendant mistakenly relies on *United States v. al-Moayad*, 545 F.3d 139, 152-53 (2d Cir. 2008). The contrast between *al-Moayad* and the case at bar actually demonstrates that it would be proper to admit the Fed. R. Evid. 404(b) evidence in this case. The lay testimony in *al-Moayad* was not relevant to the charges in the indictment, and was emotional in tone. In *al-Moayad*, the

5

prosecution presented evidence that the terrorist group Hamas had perpetrated a bus bombing in Israel.  It was relevant that the bus had been bombed on a particular day, because there was other evidence suggesting that the defendant knew in advance that the bus was going to be bombed.  *Al-Moayad*, 545 F. 3d at 147.

The prosecution in *al-Moayad* did not introduce, as the prosecution intends to in this case, a one-page spreadsheet of tweets, a page of Facebook messages, and a description, from the public record of this court, of the criminal charges lodged against the person with whom the defendant is conversing.  In *al-Moayad* the prosecution called as a witness a young Scottish law student who had been on the bombed bus and whose cousin, who had been traveling with the witness, had been killed in the explosion.  545 F.3d at 147, 152.  The witness testified not only to the fact of the bombing, but gave the jury a good deal of grisly detail.  The Second Circuit found that "[the witness] testified at length and in considerable detail about the bombing and his testimony was a central part of the government's case."  *Id*. at 147.  The government "highlighted" this witness's testimony during both its opening statement and its closing argument.  *Id*. at 152. Photographs and videos of the bombed Israeli bus were introduced, the district court observing at the time of admission that "there are spatterings of blood in all of them."  *Id*. at 153.  The witness described "glass, metal, and shrapnel flying in all directions" and testified about the eerie silence immediately after the explosion being replaced by the sound of "sirens, screaming, panic." *Id*.  The witness told the jury of finding his cousin's unconscious body on the bus, and of crying when he did so.  *Id*. The witness then reviewed the photographs, and by doing so, "again described the events immediately

6

before the attack and its aftermath." *Id*. Finally, a DVD of a newscast about the bus bombing was played for the jury. *Id*. The district court judge refused a defense request for a limiting instruction. *Id*.

In this case, there will be no such heart-wrenching details paraded before the jury, and the government is agreeable to a limiting instruction. No victim of a terrorist attack will take the stand. No photographs or videos of the aftermath of a terrorist attack will be displayed. The evidence will be presented in a straightforward, dispassionate way by a law enforcement witness. Finally, for the reasons set out in the government's initial motion *in limine* seeking the admission of this evidence, the evidence in the case at bar is relevant and probative, while the evidence in *al-Moayad*, beyond the fact of the bus bombing itself, was not.

The Eighth Circuit has upheld a district court's decision to admit expert terrorism testimony over a Fed. R. Evid. 403 objection similar to the one made here. *United States v. Omar*, 786 F.3d 1104, 1112-13 (8th Cir. 2015) (upholding the admission, in a District of Minnesota terrorism prosecution, of expert testimony linking members of the terrorist organization *al-Shabaab* (which defendant Omar was accused of supporting) to al Qaeda, Osama bin Laden, the 1998 bombings of the U.S. Embassies in Nairobi and Dar Es-Salaam, and a 2002 attempt to shoot down an Israeli airliner). While the Eighth Circuit's *Omar* decision does not concern 404(b) evidence, an expert's recounting of a terrorist organization's history is analogous to the introduction of prior act evidence through a law enforcement witness. More importantly, in *Omar* the Eighth Circuit showed how terrorism evidence, even terrorism evidence so apparently inflammatory on its face as

discussions of Osama bin Laden and al Qaeda, when handled properly, can be appropriately used in federal criminal prosecutions.

**There is no Need to Prohibit the Government From Presenting the Testimony of Witnesses Koshin Yusuf, Michele Vlasak, and Mohamed Hersi, Because the Government's Disclosures have been Timely.**

Ms. Michele Vlasak is an administrator at the Sherburne County Jail in Elk River, Minnesota, the facility at which the defendant is being held. Ms. Vlasak's testimony at the trial of this case will be to lay foundation for the admission of a recording of a single jail call, offered by the government under Fed. R. Evid. 404(b), in which the defendant is heard threatening another man with a pistol.

Ms. Vlasak was interviewed by the FBI, but not about the jail call foundation. FBI Agents heard defendant, on other, recorded, jail calls, making allegations about his conditions of confinement. An FBI Agent interviewed Ms. Vlasak about these matters on February 23, 2016 (and found the allegations to be groundless). A 302 was written the next day, uploaded into the FBI's computer system on February 25, and disclosed by the US Attorney's Office to the defendant the same day. The Vlasak 302 does not deal with the issues in this case, and it was disclosed within 48 hours of the interview taking place.[2] The 302 has been seen by the defense, and the government will promptly provide it to the Court upon request.

---

[2] If allegations about conditions of confinement are presented to the jury in this case it will be over the government's objection. If the defendant's allegations are put before the jury, Ms. Vlasak may be called by the government as a rebuttal witness, at which point the subjects discussed in her 302 would be part of the case. The government views the likelihood of this happening as remote.

Koshin Yusuf was the person threatened by the defendant in the jail call for which Michele Vlasak will provide the testimonial foundation. Koshin Yusuf was interviewed by an FBI Agent on January 19, 2016. The 302 of that interview was disclosed to the defense on February 29, 2016. When interviewed, Koshin Yusuf first denied being able to remember the telephone conversation with the defendant, then, when the jail call was played for him, stated that the defendant had threatened him. Mr. Yusuf will not be called as a witness by the government at trial. His statement, if he was called as a witness, would be Jencks, and the statement's disclosure on February 29 would have actually been early under a strict reading of the Jencks Act, 18 U.S.C. § 3500. Since Mr. Yusuf is not being called as a witness, his statement is not even Jencks. Again, the 302 of Mr. Yusuf's interview is available to the Court upon request.

Mohamed Hersi was interviewed by FBI Agents on February 1, 2016, and the 302 of that interview was disclosed to the defense by the U.S. Attorney's Office on February 29, 2016. Mr. Hersi denied retweeting the threatening tweets at issue in this case. Mr. Hersi stated that he did not do so because he would never retweet anything containing the word "f**k" because that word contains within it the letter combination "ck" which could mean "Crip Killer," and since Mr. Hersi's family is largely made up of members of the Crip gang, a retweet with a "ck" in it is out of the question for him. Suffice it to say that the government has better witnesses than Mr. Hersi and that he will not be called as a government witness at trial. The same analysis of Jencks and timeliness applies to him as to Mr. Yusuf.

In the end, therefore, the defense motion concerns two people who will not be called as witnesses, and Ms. Vlasak, whose 302 is about subjects that are not part of this case, and whose 302 was turned over in 48 hours anyway.   At trial, Ms. Vlasak is expected to do no more than lay a routine testimonial foundation for a recorded jail call.


Dated:  March 4, 2016                    Respectfully Submitted,

                                         ANDREW M. LUGER
                                         United States Attorney

                                         s/ John Docherty

                                         BY:   JOHN DOCHERTY
                                         CHARLES J. KOVATS, JR.
                                         Assistant United States Attorneys